# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

AMERICAN TOWER MANAGEMENT, LLC;
AMERICAN TOWER DELAWARE
CORPORATION; UNISITE, LLC;
SPECTRASITE COMMUNICATIONS, LLC;
AMERICAN TOWERS LLC; AMERICAN
TOWER ASSET SUB, LLC; CENTRAL
STATES TOWER HOLDINGS, LLC; DCS
TOWER SUB, LLC; GTP TOWERS I, LLC;
GTP ACQUISITION PARTNERS II, LLC; ATC
SEQUOIA, LLC; GRAINCOMM III; INSITE
WIRELESS GROUP, LLC; and INSITE
TOWERS DEVELOPMENT, LLC

Case No. 1:23-cv-1336
_____

   Plaintiffs,

v.

TPT SpeedConnect, LLC,

   Defendant.

---

## PLAINTIFFS' COMPLAINT

1.     NOW COME Plaintiffs American Tower Management, LLC; American Tower

Delaware Corporation; Unisite, LLC; SpectraSite Communications, LLC; American Towers LLC;

American Tower Asset Sub, LLC; Central States Tower Holdings, LLC; GTP Towers I, LLC; GTP

Acquisition Partners II, LLC; ATC Sequoia, LLC; GrainComm III, LLC; InSite Wireless Group, LLC,

and InSite Towers Development, LLC (collectively, the "American Tower Plaintiffs" or "Licensors"),

by and through their attorneys, FAEGRE DRINKER BIDDLE & REATH LLP, and for their

Complaint against the Defendant, TPT SpeedConnect, LLC, state as follows:

## PARTIES

2.      Plaintiff American Tower Management, LLC ("American Tower Management") is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, American Tower Management is a citizen of Delaware and Massachusetts.

3.      Plaintiff American Tower Delaware Corporation ("American Tower Delaware") is a Delaware corporation with its principal place of business in Massachusetts. As such, American Tower Delaware is a citizen of Delaware and Massachusetts.

4.      Plaintiff UniSite, LLC ("UniSite") is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, UniSite is a citizen of Delaware and Massachusetts.

5.      Plaintiff SpectraSite Communications, LLC ("SpectraSite Communications") is a Delaware limited liability company with SpectraSite, LLC as its sole member. SpectraSite, LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, SpectraSite Communications is a citizen of Delaware and Massachusetts.

6.      Plaintiff American Towers LLC, formerly known as American Towers, Inc. ("American Towers"), is a Delaware limited liability company with American Tower Corporation as its sole member.[1] American Tower Corporation is a Delaware corporation that maintains its principal

---

[1] American Tower, L.P. merged into American Towers LLC effective March 31, 2020.

place of business in Massachusetts. As such, American Towers is a citizen of Delaware and Massachusetts.

7.      Plaintiff American Tower Asset Sub, LLC ("American Tower Asset Sub") is a Delaware limited liability company with American Tower Holding Sub, LLC as its sole member. American Tower Holding Sub, LLC is a Delaware limited liability company with American Tower Guarantor Sub, LLC as its sole member. American Tower Guarantor Sub, LLC is a Delaware limited liability company with SpectraSite Communications as its sole member. SpectraSite Communications is a Delaware limited liability company with SpectraSite, LLC as its sole member. SpectraSite, LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, American Tower Asset Sub is a citizen of Delaware and Massachusetts.

8.      Plaintiff GTP Acquisition Partners II, LLC ("GTP Acquisition Partners") is a Delaware limited liability company with GTP Acquisition Partners I, LLC as its sole member. GTP Acquisition Partners I, LLC is a Delaware limited liability company with American Tower Holding Sub II, LLC as its sole member. American Tower Holding Sub II, LLC is a Delaware limited liability company with Global Tower Holdings, LLC as its sole member. Global Tower Holdings, LLC is a Delaware limited liability company with GTP Investments LLC as its sole member. GTP Investments LLC is a Delaware limited liability company with Gondola Tower Holdings LLC as its sole member. Gondola Tower Holdings LLC is a Delaware limited liability company with American Tower Investments LLC as its sole member. American Tower Investments LLC is a California limited liability company; its two members are ATC TRS II LLC and American Towers LLC. ATC TRS II LLC is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is

a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, GTP Acquisition Partners is a citizen of Delaware and Massachusetts.

9.     Plaintiff Central States Tower Holdings, LLC ("Central States Tower Holdings") is a Delaware limited liability company with SpectraSite Communications, LLC as its sole member. SpectraSite Communications, LLC is a Delaware limited liability company with SpectraSite, LLC as its sole member. SpectraSite, LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, Central States Tower Holdings is a citizen of Delaware and Massachusetts.

10.     Plaintiff DCS Tower Sub, LLC ("DCS Tower Sub") is a Delaware limited liability company with GTP Acquisition Partners I, LLC as its sole member. GTP Acquisition Partners I, LLC is a Delaware limited liability company with American Tower Holding Sub II, LLC as its sole member. American Tower Holding Sub II, LLC is a Delaware limited liability company with Global Tower Holdings, LLC as its sole member. Global Tower Holdings, LLC is a Delaware limited liability company with GTP Investments LLC as its sole member. GTP Investments LLC is a Delaware limited liability company with Gondola Tower Holdings LLC as its sole member. Gondola Tower Holdings LLC is a Delaware limited liability company with American Tower Investments LLC as its sole member. American Tower Investments LLC is a California limited liability company; its two members are ATC TRS II LLC and American Towers LLC. ATC TRS II LLC is a limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower

Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, DCS Tower Sub is a citizen of Delaware and Massachusetts.

11.     Plaintiff GTP Towers I, LLC ("GTP Towers") is a Delaware limited liability company. GTP Towers is the successor in interest to Tower Assets Newco II, LLC. GTP Towers's sole member is GTP Acquisition Partners I, LLC. GTP Acquisition Partners I, LLC is a Delaware limited liability company whose sole member is American Tower Holding Sub II, LLC. American Tower Holding Sub II, LLC is a Delaware limited liability company whose sole member is Global Tower Holdings, LLC. Global Tower Holdings, LLC is a Delaware limited liability company whose sole member is GTP Investments, LLC. GTP Investments, LLC is a Delaware limited liability company whose sole member is Gondola Tower Holdings, LLC. Gondola Tower Holdings, LLC is a Delaware limited liability company whose sole member is American Tower Investments LLC. American Tower Investments, LLC is a California limited liability company whose two members are ATC TRS II, LLC and American Towers LLC. ATC TRS II, LLC is a limited liability company whose sole member is American Towers LLC. American Towers LLC is a Delaware limited liability company whose sole member is American Tower Corporation. American Tower Corporation is a Delaware corporation which maintains its principal place of business in Massachusetts. As such, GTP Towers is a citizen of Delaware and Massachusetts.

12.     Plaintiff ATC Sequoia, LLC ("ATC Sequoia") is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, ATC Sequoia is a citizen of Delaware and Massachusetts.

13.    Plaintiff GrainComm III, LLC ("GrainComm") is a Delaware limited liability company with Grain HoldCo, LLC as its sole member. Grain HoldCo, LLC is a Delaware limited liability company with Grain HoldCo Parent, LLC as its sole member. Grain HoldCo Parent, LLC is a Delaware limited liability company with GrainComm LLC as its sole member. GrainComm LLC is a Delaware limited liability company with American Tower Investments LLC as its sole member. American Tower Investments LLC is a California limited liability company; its two members are ATC TRS II LLC and American Towers LLC. ATC TRS II LLC is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, GrainComm is a citizen of Delaware and Massachusetts.

14.    Plaintiff InSite Wireless Group, LLC ("InSite Wireless Group"), is a Delaware limited liability company with IWG Holdings, LLC as its sole member. IWG Holdings, LLC is a Delaware limited liability; its two members are MIP III Iron Holdings LLC and American Tower Investments LLC. MIP III Iron Holdings LLC is a Delaware limited liability company with ATC MIP III REIT Iron Holdings LLC as its sole member. ATC MIP III REIT Iron Holdings LLC is a Delaware limited liability company with American Tower Investments LLC as its sole member. American Tower Investments LLC is a California limited liability company; its two members are ATC TRS II LLC and American Towers LLC. ATC TRS II LLC is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, InSite Wireless Group is a citizen of Delaware and Massachusetts.

15.     Plaintiff InSite Towers Development, LLC ("<u>InSite Towers Development</u>"), is a Delaware limited liability company with InSite Issuer, LLC as its sole member. InSite Issuer, LLC is a Delaware limited liability company with InSite Guarantor LLC as its sole member. InSite Guarantor LLC is a Delaware limited liability company with InSite Wireless Group, LLC as its sole member. InSite Wireless Group, LLC is a Delaware limited liability company with IWG Holdings, LLC as its sole member. IWG Holdings, LLC is a Delaware limited liability; its two members are American Tower Investments LLC and MIP III Iron Holdings LLC. MIP III Iron Holdings LLC is a Delaware limited liability company with ATC MIP III REIT Iron Holdings LLC as its sole member. ATC MIP III REIT Iron Holdings LLC is a Delaware limited liability company with American Tower Investments LLC as its sole member. American Tower Investments LLC is a California limited liability company; its two members are ATC TRS II LLC and American Towers LLC. ATC TRS II LLC is a Delaware limited liability company with American Towers LLC as its sole member. American Towers LLC is a Delaware limited liability company with American Tower Corporation as its sole member. American Tower Corporation is a Delaware corporation that maintains its principal place of business in Massachusetts. As such, Insite Towers Development is a citizen of Delaware and Massachusetts.

16.     Defendant TPT SpeedConnect, LLC ("<u>SpeedConnect</u>"), is a Colorado limited liability company and wholly owned subsidiary of TPT Global Tech, Inc. ("<u>TPT Global</u>").[2] TPT Global is a

---

[2] SpeedConnect was formed by TPT Global in 2019 and, following TPT Global's acquisition of SpeedConnect LLC (the predecessor in interest to SpeedConnect), SpeedConnect assumed "all contracts and liabilities" from SpeedConnect LLC. SpeedConnect is, therefore, upon information and belief, the successor in interest to SpeedConnect LLC under the agreements at issue herein. A copy of TPT Global's Form S-1/A from May 6, 2022 describing the acquisition of SpeedConnect LLC on page 41 is attached as **Exhibit D.**

Florida corporation with its principal place of business in California. As such, for diversity purposes, SpeedConnect is a citizen of Florida and California.[3]

## JURISDICTION AND VENUE

17.     This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the American Tower Plaintiffs and Defendant and because the American Tower Plaintiffs seek to recover damages in excess of $75,000. As set forth above, the American Tower Plaintiffs are citizens of Delaware and Massachusetts, while SpeedConnect is a citizen of Florida and California.

18.     To the extent that the American Tower Plaintiffs assert any claims not within this Court's original jurisdiction, the American Tower Plaintiffs invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

19.     The American Tower Plaintiffs have been injured in an amount that exceeds the jurisdictional minimum of $75,000, exclusive of fees and costs which amount will be determined at trial.

20.     This Court has general personal jurisdiction over SpeedConnect because it is a limited liability company formed and existing under the laws of Colorado. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Warming Trends, LLC v. Flame Designz, LLC*, No.22-cv-00252-PAB-STV, 2023 WL 196288, at *4 (D. Colo. Jan. 17, 2023) ("Courts have held that *Daimler* applies with equal force to limited liability companies.").

---

[3] On March 27, 2023, SpeedConnect filed a Statement of Conversion with the Colorado Secretary of State (the "Conversion") thereby purporting to convert SpeedConnect into a Colorado corporation (*i.e.*, SpeedConnect, Inc.) with addresses listed in both Colorado and California. A copy of the Conversion is attached as **Exhibit E.** Even if it is ultimately determined that the proper defendant should now be SpeedConnect, Inc. instead of SpeedConnect, LLC, 28 U.S.C. § 1332 is still satisfied. This is because the citizenship of SpeedConnect, Inc. would either be Colorado, or Colorado and California if SpeedConnect, Inc.'s principal place of business is in California. Since none of the Plaintiffs are citizens of Colorado or California, either way, there is still complete diversity of citizenship.

21.     Venue is appropriate in this District in accordance with 28 U.S.C. §§ 1391(b)(1) and (c)(2). Specifically, SpeedConnect is a Colorado limited liability company residing within the District of Colorado that is subject to the Court's personal jurisdiction with respect to this civil action.

## FACTS

22.     This dispute is about the failure to pay and subsequent default of SpeedConnect, as licensee, under the terms of sixty (60) license agreements with the American Tower Plaintiffs, as Licensors (the "Agreements").

23.     SpeedConnect agreed to pay certain sums to the American Tower Plaintiffs under each of the 60 Agreements thereby allowing SpeedConnect to install and operate telecommunications equipment on multiple cellular telecommunications towers owned or operated by the American Tower Plaintiffs in Arizona, Idaho, Illinois, Iowa, Michigan, Montana, and South Dakota (the "ATC Sites").

24.     American Tower Plaintiffs, sometimes independently and other times through their predecessors in interest, and SpeedConnect negotiated and executed the 60 Agreements between 2006 and 2020 for SpeedConnect to utilize the ATC Sites. A chart summarizing the parties, site numbers, dates, and other key terms for each Agreement is attached as **Exhibit A**.

25.     The 60 Agreements are grouped into five categories as follows:

a.      Forty-nine (49) of the Agreements (the "Category 1 Agreements") with American Tower Management, American Tower Delaware, UniSite, SpectraSite Communications, American Towers, American Tower Asset Sub, Central States Tower Holdings, GTP Acquisition Partners, DCS Tower Sub, GTP Towers, and ATC Sequoia (collectively, the "Category 1 Plaintiffs") share substantially similar terms. An exemplar of the Category 1 Agreements is attached hereto as Exhibit B(1);

b.   Six (6) Agreements (the "Category 2 Agreements") are with GrainComm, as the successor in interest to TowerCo 2013 LLC. An exemplar of the Category 2 Agreements is attached hereto as Group Exhibit B(2);

c.   Two (2) Agreements (the "Category 3 Agreements") are with InSite Wireless Group, as the successor in interest to Idaho Tower Company, LLC.  An exemplar of the Category 3 Agreements is attached hereto as Group Exhibit B(3);

d.   Two (2) Agreements (the "Category 4 Agreements") are with InSite Towers Development, as the successor in interest Hickman Sites, LLC, is Licensor.  An exemplar of the Category 4 Agreements is attached hereto as Group Exhibit B(4); and

e.   One (1) Agreement (the "American Towers Co-Location Agreement") is with American Towers LLC, as the successor in interest to Dakota Leasing for Telecommunications, LLC. The American Towers Co-Location Agreement is attached hereto as Group Exhibit B(5).

26.    The 60 Agreements generally grant SpeedConnect license rights, pursuant to certain terms and conditions, to access, use, install, maintain, and operate wireless telecommunication equipment, including antennas and related equipment on the ATC Sites. In return, SpeedConnect is responsible to pay certain monthly or annual rents or license fees to the American Tower Plaintiffs (as specified and adjusted pursuant to the terms of each of the 60 Agreements).  SpeedConnect is required to timely make payments pursuant to all 60 Agreements by a specified due date or, following failure to timely remit payment, within a certain cure period, ranging in length but in no instance exceeding sixty (60) days, after written notice of such default. *See* **Exhibit A**.

27.    SpeedConnect breached each of the 60 Agreements at issue in this Complaint by (1) failing to timely pay rents or license fees as prescribed in each Agreement, and (2) failing to cure such defaults after being provided written notice in accordance with the terms of each respective

Agreement. For the avoidance of doubt, SpeedConnect has *never* paid those past due rents or license fees, nor have they paid *any* rent or license fees since on or about November 24, 2021.

28.     The 60 Agreements are governed by the particular state law where each ATC Site is located. All of the ATC Sites at issue in this Complaint are located either in Arizona, Idaho, Illinois, Iowa, Montana, Michigan, or South Dakota. *See* **Exhibit A**.

29.     Certain of the 60 Agreements provide that if SpeedConnect fails to vacate an ATC Site upon termination, including upon an event of default by SpeedConnect, the respective American Tower Plaintiff has the right to retake possession of the ATC Site and any of SpeedConnect's remaining equipment and dispose of it.  *See* **Exhibit A**.

30.     Certain of the 60 Agreements provide that, upon failure to timely remit payment, interest and/or late fees begin to accrue on the overdue amounts, or, alternatively, that rent due through the current term can be accelerated, such that all remaining rent and fees become immediately due and payable. *See* **Exhibit A**.

31.     The 60 Agreements provide that each may be terminated by the respective American Tower Plaintiff without liability following uncured defaults by SpeedConnect. *See* **Exhibit A**.

32.     Certain of the 60 Agreements provide that the Licensors (*i.e.*, American Tower Plaintiffs) may recover damages, costs and expenses resulting from any event(s) of default, including, in many instances, reasonable attorneys' fees and costs incurred in pursuing a recovery based on SpeedConnect's uncured default. *See* **Exhibit A.**

33.     SpeedConnect installed its equipment on most of the ATC Sites, and, on information and belief, SpeedConnect continues to operate its installed equipment.

34.     SpeedConnect paid the annual or monthly rents or license fees due under the Agreements until September 22, 2020. Thereafter, SpeedConnect failed to pay all of the rents and

license fees due, until ultimately, SpeedConnect stopped paying in accordance with all the Agreements at issue in this action. Since November 24, 2021 SpeedConnect has failed to pay any monthly rents or license fees under the Agreements, through and including the date of this filing.

35.     Each applicable American Tower Plaintiff performed its duties under the respective Agreement.

36.     The American Tower Plaintiffs sent SpeedConnect two Notices of Default on or about August 10, 2021, and December 23, 2021, per the terms of each respective Agreement, therein providing formal notice that because SpeedConnect had failed to pay certain annual or monthly rents or license fees due under the 60 Agreements, the American Tower Plaintiffs were demanding that SpeedConnect immediately cure all defaults and remit overdue rents and fees, plus applicable tax, interest, and late fees, as provided for in the Agreements. Copies of the Notices of Default are attached as part of **Group Exhibit C**.

37.     SpeedConnect failed to cure the defaults within the applicable cure periods under the Agreements, or at any time thereafter.

38.     SpeedConnect received a benefit through the exercise of the rights granted it under each of the 60 Agreements, even though SpeedConnect failed to pay annual or monthly rents and license fees, and late fees and interest accrued or accruing thereon, which were due and owing to the American Tower Plaintiffs pursuant to the 60 Agreements.

39.     On January 19, 2022, the American Tower Plaintiffs sent a Notice of Termination and Payment Demand to SpeedConnect in accordance with the terms of the Agreements. A true and correct copy of the Notice of Termination is attached as part of Group Ex. C.

40.     Because SpeedConnect failed to pay the rents and license fees due under each of the 60 Agreements, and to cure the defaults within the applicable cure periods under the Agreements, the

American Tower Plaintiffs are entitled to, among other relief provided by governing law, some or all of the following remedies:  (1) to declare immediately due and payable overdue and outstanding monthly and/or annual rents or license fees and other charges or fees, and pursuant to some Agreements, to accelerate remaining annual or monthly rents or license fees due for the remainder of the term; (2) to remove and dispose of SpeedConnect's equipment remaining on the ATC Sites; (3) to recover costs incurred in connection with the removal of SpeedConnect's equipment and the disposal of same; (4) to recover reasonable attorneys' fees and other costs; and/or (5) to recover interest and/or late fees. *See* **Exhibit A**.

### COUNT I: BREACH OF CONTRACT AS TO CATEGORY 1 AGREEMENTS

41.     The American Tower Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth and realleged herein.

42.     The Category 1 Agreements are valid and enforceable contracts supported by adequate consideration.  *See* exemplar of Category 1 Agreement, at Ex. B(1).

43.     Paragraph 5(a) of the Category 1 Agreements provides that SpeedConnect is required to pay the American Tower Plaintiffs monthly rent.

44.     Paragraph 22 of the Category 1 Agreements provides that in the event of default or breach, the American Tower Plaintiffs, as Licensors, may terminate the applicable Agreement and be entitled to the following remedies:

(a)     to accelerate and declare to be immediately due and payable all Monthly License Fees and other charges or fees that would have been due absent the default or breach, discounted by an annual rate of 5%;

(b)     to interest on past due amounts at a rate equal to 18% per annum, or at a lower rate if required by law in the state in which the Agreement is to be performed;

(c)     to remove SpeedConnect's Approved Equipment without being liable for trespass or conversion, at SpeedConnect's sole cost and expense and to retain the equipment for a period of thirty (30) days, after which it is deemed to be abandoned if not claimed by SpeedConnect; and

(d)     to late payment fees equal to amounts ranging between 10-25% of the then-current Monthly License Fee for any payment or reimbursement due to the applicable American Tower Plaintiff as Licensor under the Agreement which is overdue by ten (10) days or more, and that such fee shall be assessed for each thirty (30) day period thereafter that any such amount (or portion thereof) remains unpaid.

45.     The Category 1 Plaintiffs have fully performed their obligations under the Category 1 Agreements by providing SpeedConnect with the rights and access promised to it pursuant to the Category 1 Agreements.

46.     SpeedConnect has breached, and continues to breach, its obligations under the Category 1 Agreements by, *inter alia*, failing to pay monthly rent as required by the Category 1 Agreements and thereafter, failing to remedy its defaults, even after written demand by the American Tower Plaintiffs.

47.     As a result of SpeedConnect's defaults, the Category 1 Plaintiffs may terminate the Category 1 Agreements.  The Category 1 Plaintiffs did, in fact, terminate the Category 1 Agreements via the Notice of Termination letter. *See* Group Ex. C.

48.     SpeedConnect's continued breach of the Category 1 Agreements has damaged the Category 1 Plaintiffs by depriving them of the revenue contemplated in the Category 1 Agreements. SpeedConnect's breaches have further damaged, and continue to damage, the Category 1 Plaintiffs by requiring them to spend additional money to retain counsel and pursue payment through this litigation.

49.     The Category 1 Plaintiffs' damages, inclusive of damages based upon SpeedConnect's breaches of the Category 1 Agreements, and as of the filing of this Complaint, total in excess of $2,352,048.33, before attorneys' fees and court costs. These damages continue to accrue interest and/or late fees, as provided for in the Category 1 Agreements.

## COUNT II: PROMISSORY ESTOPPEL AS TO THE CATEGORY 1 PLAINTIFFS

### (IN THE ALTERNATIVE TO COUNT I)

50.     The American Tower Plaintiffs incorporate and reallege the allegations in Paragraphs 1 through 40 as if fully stated herein.

51.     SpeedConnect made a definite promise to the Category 1 Plaintiffs that it would pay monthly rent in exchange for the Category 1 Plaintiffs' agreement to allow SpeedConnect to install, maintain and operate its telecommunications equipment at 49 of the ATC Sites.

52.     SpeedConnect made such a promise expecting the Category 1 Plaintiffs to rely on that promise and to provide access and use of their sites for SpeedConnect to install and operate its equipment.

53.     In reliance on SpeedConnect's promises, the Category 1 Plaintiffs set aside valuable space on, and provided SpeedConnect access and use of 49 of the ATC Sites.

54.     SpeedConnect failed to honor its promises by failing to pay the agreed-to monthly rent to the Category 1 Plaintiffs.

55.     Allowing SpeedConnect to violate its promises would result in injustice for the Category 1 Plaintiffs. The Category 1 Plaintiffs would lose valuable revenue that was promised by SpeedConnect, leaving the Category 1 Plaintiffs with no way to recover that revenue absent this Court's enforcement of SpeedConnect's promise.

56.     SpeedConnect's failure to honor its promise to the Category 1 Plaintiffs has harmed the Category 1 Plaintiffs in an amount to be determined at trial, but in excess of $2,352,048.33.

## COUNT III: UNJUST ENRICHMENT AS TO CATEGORY 1 PLAINTIFFS
### (IN THE ALTERNATIVE TO COUNTS I & II)

57.     The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully stated herein.

58.     The Category 1 Plaintiffs conferred a benefit upon SpeedConnect by providing space on 49 of the ATC Sites for SpeedConnect to install, maintain, and operate its telecommunication equipment. In addition, the Category 1 Plaintiffs conferred a benefit upon SpeedConnect by allowing SpeedConnect access to its equipment on each tower and/or premises in order to maintain and service its equipment.

59.     SpeedConnect accepted the benefits conferred by the Category 1 Plaintiffs by continuing to install, maintain, and use its telecommunication equipment at each applicable ATC Site.

60.     SpeedConnect, however, did not compensate the Category 1 Plaintiffs for the benefits the Category 1 Plaintiffs conferred on it. SpeedConnect has retained all of the benefits conferred by the Category 1 Plaintiffs without compensating them for the value of those benefits.

61.     The value of the benefits conferred on SpeedConnect by the Category 1 Plaintiffs exceeds $2,352,048.33.

62.     It would be unjust and inequitable for SpeedConnect to retain the benefits the Category 1 Plaintiffs conferred upon it without compensating the Category 1 Plaintiffs. Only an order from this Court requiring SpeedConnect to pay the Category 1 Plaintiffs for the benefits the Category 1 Plaintiffs conferred upon SpeedConnect will prevent such an injustice.

### COUNT IV: BREACH OF CONTRACT AS TO CATEGORY 2 AGREEMENTS

63.     The American Tower Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth and realleged herein.

64.     The six Category 2 Agreements are valid and enforceable contracts supported by adequate consideration.  *See* exemplar of Category 2 Agreements, at Group Ex. B(2).

65.     Pursuant to the Category 2 Agreements, SpeedConnect is required to pay GrainComm monthly rent. In the event the monthly rent is not timely paid pursuant to the terms of the Category 2 Agreements, GrainComm is entitled to a late charge of 5% of any overdue amount.

66.     Paragraph 22(b) of the Category 2 Agreements provides that in the event of default, GrainComm, as the Licensor, may terminate the Agreement and accelerate all of the rents and fees that would otherwise have been due to GrainComm absent breach for the then current term, discounted by an annual percentage rate equal to 10%.

67.     Paragraph 27 of the Category 2 Agreements provides if any equipment and improvements are held over by SpeedConnect after the termination of the Agreement, GrainComm is entitled to a monthly hold-over fee equal to 150% of the then-effective monthly license fee, together with any and all rent, costs, damages, or other expenses related to the hold-over.

68.     Paragraph 31(c) of the Category 2 Agreements provides that the prevailing party in any action or proceeding to enforce the Agreement is entitled to receive reasonable attorneys' fees and other reasonable expenses from the non-prevailing party.

69.     GrainComm has fully performed its obligations under the Category 2 Agreements by providing SpeedConnect the rights and access promised to it through the Category 2 Agreements.

70.     SpeedConnect has breached, and continues to breach, its obligations under the Category 2 Agreements by, *inter alia*, failing to pay monthly rent as required by the Category 2 Agreements and failing to remedy its defaults, even after written demand by Plaintiffs.

71.     As a result of SpeedConnect's default, GrainComm may terminate the Category 2 Agreements. GrainComm did, in fact, terminate the Category 2 Agreements in accordance with the terms of said Agreements by issuing the Notice of Termination. *See* Group Ex. C.

72.     SpeedConnect's continued breaches of the Category 2 Agreements have damaged GrainComm by depriving it of the revenue contemplated in the Category 2 Agreements. SpeedConnect's breaches have damaged, and continue to damage, GrainComm by requiring it to spend additional money to retain counsel and pursue payment through this litigation.

73.     GrainComm's damages, inclusive of damages based upon SpeedConnect's breaches of the Category 2 Agreements, and as of the filing of this Complaint, total in excess of $367,835.00 before attorneys' fees and court costs. These damages continue to accrue interest and/or late fees, as provided for in the Category 2 Agreements, while SpeedConnect remains in breach.

## COUNT V: PROMISSORY ESTOPPEL AS TO THE CATEGORY 2 AGREEMENTS (IN THE ALTERNATIVE TO COUNT IV)

74.     The American Tower Plaintiffs incorporate and reallege the allegations in 1 through 40 as if fully stated herein.

75.     SpeedConnect made a definite promise to GrainComm that it would pay monthly rent in exchange for operating its equipment at six of the ATC Sites.

76.     SpeedConnect made such a promise expecting the Category 2 Plaintiffs to rely on that promise and to provide access and use of its sites for SpeedConnect to install and operate its equipment.

77.     In reliance on SpeedConnect's promise, GrainComm set aside valuable space on, and provided SpeedConnect access and use of, the six of the ATC Sites.

78.     SpeedConnect failed to honor its promise by failing to pay the agreed to monthly rent to GrainComm.

79.     Allowing SpeedConnect to violate its promises would result in injustice for GrainComm. GrainComm would lose valuable revenue that was promised by SpeedConnect, leaving GrainComm with no way to recover that revenue absent this Court's enforcement of SpeedConnect's promise.

80.     SpeedConnect's failure to honor its promise to GrainComm has harmed GrainComm in an amount to be determined at trial, but in excess of $367,835.00.

**COUNT VI: UNJUST ENRICHMENT AS TO GRAINCOMM**
**(IN THE ALTERNATIVE TO COUNTS IV & V)**

81.     The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully stated herein.

82.     GrainComm conferred a benefit upon SpeedConnect by providing space on the applicable ATC Sites for SpeedConnect to install, maintain, and operate its telecommunication equipment. In addition, GrainComm conferred a benefit upon SpeedConnect by allowing SpeedConnect access to the ATC Sites in order to maintain and service its equipment.

83.     SpeedConnect accepted the benefits conferred by GrainComm by continuing to install, maintain, and use its telecommunication equipment on each applicable ATC Site.

84.     SpeedConnect, however, did not compensate GrainComm for the benefits GrainComm conferred on SpeedConnect. SpeedConnect has retained all of the benefits conferred by GrainComm without compensating GrainComm for the value of those benefits.

85.     The value of the benefits conferred on SpeedConnect by GrainComm exceeds $367,835.00.

86.     It would be unjust and inequitable for SpeedConnect to retain the benefits GrainComm conferred upon it. Only an order from this Court requiring SpeedConnect to pay GrainComm for the benefits GrainComm conferred upon SpeedConnect will prevent such an injustice.

## COUNT VII: BREACH OF CONTRACT AS TO ATC CATEGORY 3 AGREEMENTS

87.     The American Tower Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth and realleged herein.

88.     The Category 3 Agreements are valid and enforceable contracts supported by adequate consideration. *See* exemplar of Category 3 Agreement, at Ex. B(3).

89.     Paragraph 3 of the Category 3 Agreements provides that SpeedConnect is required to pay InSite Wireless Group annual rent. Paragraph 3(f) provides for "an additional fee [*sic*] a late charge equal to ten percent (10%) of each installment or sum made more than ten (10) days after its due date."

90.     Paragraph 14(b) of the Category 3 Agreements provides that SpeedConnect is liable to InSite Wireless Group for any costs or expenses incurred by Insite Wireless Group as a result of a default by SpeedConnect.

91.     Paragraph 14(b) of the Category 3 Agreements further provides that in the event of default, InSite Wireless Group may terminate the Agreement and remove SpeedConnect's equipment, improvements, personnel or property at the applicable ATC Site at SpeedConnect's cost and expense.

92.     Paragraph 22 of the Category 3 Agreements provides that "[i]n the event of litigation between the parties in connection with this Agreement, each party shall be entitled to recover its

reasonable attorneys' fees and court costs related to such issue on which that party is the prevailing party, as determined and allocated by the court as part of the judgment."

93.     InSite Wireless Group has fully performed its obligations under the Category 3 Agreements by providing SpeedConnect the rights and access promised to it in the Category 3 Agreements.

94.     SpeedConnect has breached, and continues to breach, its obligations under the Category 3 Agreements by, *inter alia*, failing to pay annual rent as due and required by the Category 3 Agreements and thereafter, failing to remedy its default, even after written demand by Plaintiffs.

95.     As a result of SpeedConnect's default, InSite Wireless Group may terminate the Category 3 Agreements. InSite Wireless Group has, in fact, terminated the Category 3 Agreements by issuing the Notice of Termination to SpeedConnect. *See* Group Ex. C.

96.     SpeedConnect's continued breach of the Category 3 Agreements has damaged InSite Wireless Group by depriving it of the revenue contemplated in the Category 3 Agreements. SpeedConnect's breaches have damaged, and continue to damage, InSite Wireless Group by requiring it to spend additional money to retain counsel and pursue payment through this litigation.

97.     InSite Wireless Group's damages, inclusive of damages based upon SpeedConnect's breaches of the Category 3 Agreements, and as of the filing of this Complaint, total in excess of $85,926.96 before attorneys' fees and court costs.  These damages continue to accrue interest and/or late fees, as provided for in the Category 3 Agreements.

### COUNT VIII: PROMISSORY ESTOPPEL AS TO INSITE WIRELESS GROUP
### (IN THE ALTERNATIVE TO COUNT VII)

98.     The American Tower Plaintiffs incorporate and reallege the allegations in 1 through 40 as if fully stated herein.

99.     SpeedConnect made a definite promise to InSite Wireless Group that it would pay annual rent in exchange for operating its equipment at two different ATC Sites.

100.     SpeedConnect made such a promise expecting InSite Wireless Group to rely on that promise and to provide access and use of its sites for SpeedConnect to install and operate its equipment.

101.     In reliance on SpeedConnect's promises in the Category 3 Agreements, InSite Wireless Group set aside valuable space on, and provided SpeedConnect access and use of, two of the ATC Sites.

102.     SpeedConnect failed to honor its promise by failing to pay the annual rent which it agreed to pay to InSite Wireless Group.

103.     Allowing SpeedConnect to violate its promises would result in injustice for InSite Wireless Group. InSite Wireless Group would lose valuable revenue that it was promised by SpeedConnect, leaving InSite Wireless Group with no way to recover that revenue absent this Court's enforcement of SpeedConnect's promise.

104.     SpeedConnect's failure to honor its promise to InSite Wireless Group has harmed the InSite Wireless Group in an amount to be determined at trial, but in excess of $85,926.96.

## COUNT IX: UNJUST ENRICHMENT AS TO THE INSITE WIRELESS GROUP
### (IN THE ALTERNATIVE TO COUNTS VII & VIII)

105.     The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully stated herein.

106.     InSite Wireless Group conferred a benefit upon SpeedConnect by providing space on the applicable ATC Sites for SpeedConnect to install, maintain, and operate its telecommunication equipment. In addition, InSite Wireless Group conferred a benefit upon SpeedConnect by allowing SpeedConnect access to the applicable ATC Sites in order to maintain and service its equipment.

107.    SpeedConnect accepted the benefits conferred by InSite Wireless Group by continuing to install, maintain, and use its telecommunication equipment on each applicable ATC Site.

108.    SpeedConnect, however, did not compensate InSite Wireless Group for the benefits InSite Wireless Group conferred on SpeedConnect. SpeedConnect has retained all of the benefits conferred by InSite Wireless Group without compensating it for the value of those benefits.

109.    The value of the benefits conferred on SpeedConnect by InSite Wireless Group exceeds $85,926.96.

110.    It would be unjust and inequitable for SpeedConnect to retain the benefits InSite Wireless Group conferred upon it. Only an order from this Court requiring SpeedConnect to pay InSite Wireless Group for the benefits InSite Wireless Group conferred upon SpeedConnect will prevent such an injustice.

## COUNT X: BREACH OF CONTRACT AS TO THE CATEGORY 4 AGREEMENTS

111.    The American Tower Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth and realleged herein.

112.    The Category 4 Agreements are valid and enforceable contracts supported by adequate consideration. *See* exemplar of Category 4 Agreements, at Group Ex. B(4).

113.    Paragraph 4.01 of the Category 4 Agreements provides that SpeedConnect is required to pay InSite Towers Development monthly rent.

114.    Paragraph 7.01 of the Category 4 Agreements provides that in the event of default, InSite Towers Development may accelerate all amounts due under the Agreement and declare such amounts to be immediately due or declare the Agreement terminated and demand payments of all amounts due as of the date of termination.

115.    Paragraph 8.01 of the Category 4 Agreements provides that the prevailing party in any proceeding to enforce any rights or obligations arising under the Category 4 Agreements is entitled to recover the court costs and attorneys' fees incurred.

116.    InSite Towers Development has fully performed its obligations under the respective Category 4 Agreements by providing SpeedConnect the rights, access, and use promised to it pursuant to those Agreements.

117.    SpeedConnect has breached, and continues to breach, its obligations under the Category 4 Agreements by, *inter alia*, failing to pay monthly rent as required by the Category 4 Agreements and thereafter, failing to remedy its defaults, even after written demand by InSite Towers Development.

118.    As a result of SpeedConnect's default and failure to cure under the Category 4 Agreements, InSite Towers Development has the right to terminate the Category 4 Agreements. InSite Towers Development did, in fact, terminate the Category 4 Agreements via the Notice of Termination. See Group Ex. C.

119.    SpeedConnect's continued breach of the Category 4 Agreements has damaged InSite Towers Development by depriving it of the revenue contemplated in the respective Category 4 Agreements. SpeedConnect's breaches have damaged, and continue to damage, InSite Towers Development by requiring it to spend additional money to retain counsel and pursue payment through this litigation.

120.    InSite Towers Development damages, inclusive of damages based upon SpeedConnect's breaches of the Category 4 Agreements, and as of the filing of this Complaint, total in excess of $46,504.65 before attorneys' fees and court costs. These damages continue to accrue interest and/or late fees, as provided for in the Category 4 Agreements.

## COUNT XI: PROMISSORY ESTOPPEL AS TO THE CATEGORY 4 AGREEMENTS
### (IN THE ALTERNATIVE TO COUNT X)

121.    The American Tower Plaintiffs incorporate and reallege the allegations in 1 through 40 as if fully stated herein.

122.    SpeedConnect made a definite promise to InSite Towers Development that it would pay monthly rent in exchange for operating its equipment at two different ATC Sites.

123.    SpeedConnect made such a promise expecting InSite Towers Development to rely on that promise and to provide access and use of the applicable ATC Sites for SpeedConnect to install and operate its equipment.

124.    In reliance on SpeedConnect's promise, InSite Towers Development set aside valuable space on, and provided SpeedConnect access and use of, two of the ATC Sites.

125.    SpeedConnect failed to honor its promise by failing to pay the monthly rents which it agreed to pay to InSite Towers Development.

126.    Allowing SpeedConnect to violate its promises would result in injustice for InSite Towers Development. InSite Towers Development would lose valuable revenue that it was promised by SpeedConnect, leaving it with no way to recover that revenue absent this Court's enforcement of SpeedConnect's promise.

127.    SpeedConnect's failure to honor its promise to InSite Towers Development has harmed InSite Towers Development in an amount to be determined at trial, but in excess of $46,504.65.

## COUNT XII: UNJUST ENRICHMENT AS TO INSITE TOWERS DEVELOPMENT
### (IN THE ALTERNATIVE TO COUNTS X & XI)

128.    The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully stated herein.

129.    InSite Towers Development conferred a benefit upon SpeedConnect by providing space on the applicable ATC Sites for SpeedConnect to install, maintain, and operate its telecommunication equipment. In addition, InSite Towers Development conferred a benefit upon SpeedConnect by allowing SpeedConnect access to the applicable ATC Sites in order to maintain and service its equipment.

130.    SpeedConnect accepted the benefits conferred by InSite Towers Development by continuing to install, maintain, and use its telecommunication equipment on each applicable ATC Site.

131.    SpeedConnect, however, did not compensate InSite Towers Development for the benefits InSite Towers Development conferred on SpeedConnect. SpeedConnect has retained all of the benefits conferred by InSite Towers Development without compensating it for the value of those benefits.

132.    The value of the benefits conferred on SpeedConnect by InSite Towers Development exceeds $46,504.65.

133.    It would be unjust and inequitable for SpeedConnect to retain the benefits InSite Towers Development conferred upon it without compensating InSite Towers Development. Only an order from this Court requiring SpeedConnect to pay InSite Towers Development for the benefits InSite Towers Development conferred upon SpeedConnect will prevent such an injustice.

## COUNT XIII: BREACH OF CONTRACT AS TO AMERICAN TOWERS CO-LOCATION AGREEMENT

134.     The American Tower Plaintiffs incorporate Paragraphs 1 through 40 as if fully set forth and realleged herein.

135.     The American Towers Co-Location Agreement is a valid and enforceable contract supported by adequate consideration.  *See* American Towers Co-Location Agreement, at Ex. B(5).

136.     Paragraph 5 of the American Towers Co-Location Agreement provides that SpeedConnect is required to pay American Towers a monthly license fee. In the event the monthly license fee is not paid on or before its due date or within five days thereafter, SpeedConnect must also pay a late fee equal to 10% of the late rental payment.

137.     Paragraph 19(k) of the American Towers Co-Location Agreement provides that if there is litigation as a result of either party's failure to comply with the Agreement, the prevailing party in such litigation is entitled to be reimbursed for all costs incurred or extended in connection therewith, including reasonable attorneys' fees and court costs.

138.     Paragraph 10 of the American Towers Co-Location Agreement provides that the Agreement may be terminated upon an uncured default.

139.     American Towers has fully performed its obligations under the American Towers Co-Location Agreement by providing SpeedConnect the rights, access, use, and license promised to it pursuant to that Agreement.

140.     SpeedConnect has breached, and continues to breach, its obligations under the American Towers Co-Location Agreement by, *inter alia*, failing to pay monthly license fees as required by the American Towers Co-Location Agreement and thereafter, failing to remedy its defaults, even after written demand by American Towers.

141.    As a result of SpeedConnect's default, American Towers may terminate the Agreement and accelerate all remaining payment for the term. American Towers has, in fact, terminated the Agreement via the Notice of Termination. *See* Group Ex. C.

142.    SpeedConnect's continued breach of the American Towers Co-Location Agreement has damaged American Towers by depriving it of the revenue contemplated therein. SpeedConnect's breaches have damaged, and continue to damage, American Towers by requiring it to spend additional money to retain counsel and pursue payment through this litigation.

143.    American Towers' damages, inclusive of damages based upon SpeedConnect's breaches of the American Towers Co-Location Agreement, and as of the filing of this Complaint, total in excess of $39,571.00 before attorneys' fees and court costs. These damages continue to accrue interest and/or late fees,[4] as provided in the American Towers Co-Location Agreement.

## COUNT XIV: PROMISSORY ESTOPPEL AS TO AMERICAN TOWERS
### (IN THE ALTERNATIVE TO COUNT XIII)

144.    The American Tower Plaintiffs incorporate and reallege the allegations in Paragraphs 1 through 40 as if fully stated herein.

145.    SpeedConnect made a definite promise to American Towers that it would pay a monthly fee in exchange for operating its equipment at one of the ATC Sites.

146.    SpeedConnect made such a promise expecting American Towers to rely on that promise and to provide access and use of the applicable ATC Site for SpeedConnect to install and operate its telecommunications equipment.

147.    In reliance on SpeedConnect's promise, American Towers set aside valuable space on, and provided SpeedConnect access and use of, one of the ATC Sites.

---

[4] The American Tower Plaintiffs may aggregate its damages across all of the Agreements under which it is the Lessor or Licensor in order to exceed the amount in controversy requirement under 28 U.S.C. § 1332.

148.   SpeedConnect failed to honor its promise by failing to pay the agreed to monthly rent.

149.   Allowing SpeedConnect to violate its promises would result in injustice for American Towers. American Towers would lose valuable revenue that it was promised by SpeedConnect, leaving it with no way to recover that revenue absent this Court's enforcement of SpeedConnect's promise.

150.   SpeedConnect's failure to honor its promise to American Towers has harmed American Towers in an amount to be determined at trial.

## COUNT XV: UNJUST ENRICHMENT AS TO AMERICAN TOWERS
### (IN THE ALTERNATIVE TO COUNTS XIII & XIV)

151.   The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully stated herein.

152.   American Towers conferred a benefit upon SpeedConnect by providing space on its communications towers and premises for SpeedConnect to install, maintain, and operate its communication equipment. In addition, American Towers conferred a benefit upon SpeedConnect by allowing SpeedConnect access on each tower and/or premises in order to maintain and service its equipment.

153.   SpeedConnect accepted the benefits conferred by American Towers by continuing to install, maintain, and use its telecommunication equipment on the applicable ATC Site.

154.   SpeedConnect, however, did not compensate American Towers for the benefits American Towers conferred on SpeedConnect. SpeedConnect has retained all of the benefits conferred by American Towers without compensating it for the value of the benefits.

155.   The value of the benefits conferred on SpeedConnect by American Towers exceeds $75,000.

156.     It would be unjust and inequitable for SpeedConnect to retain the benefits American Towers conferred upon it without compensating American Towers. Only an order from this Court requiring SpeedConnect to pay American Towers for the benefits American Towers conferred upon SpeedConnect will prevent such an injustice.

**COUNT XXII: DECLARATORY JUDGMENT**

157.     The American Tower Plaintiffs incorporate and reallege Paragraphs 1 through 40 as if fully set forth herein.

158.     Under 28 U.S.C. § 2201, this Court, in the "case of actual controversy" between the parties, may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.*

159.     The American Tower Plaintiffs and SpeedConnect are embroiled in an actual controversy regarding SpeedConnect's breaches of the 60 Agreements.

160.     The American Tower Plaintiffs sent two Notices of Default and a Notice of Termination to SpeedConnect thereby terminating the 60 Agreements.

161.     As such, this Court can declare SpeedConnect in breach of its obligations pursuant to the 60 Agreements and declare the 60 Agreements terminated.

162.     Further, this Court can declare that the American Tower Plaintiffs, pursuant to applicable 60 Agreements providing for such relief, may, without liability, take possession of, remove, and dispose of any SpeedConnect equipment remaining on the 60 ATC Sites.

WHEREFORE, the American Tower Plaintiffs respectfully request this Court find in their favor and against Defendant SpeedConnect on all Counts herein alleged and enter an Order as follows:

(a)     Awarding damages in an amount to be proven at trial and in excess of $2,891,885.94;

30

(b)     Awarding overdue rent, interest, late fees, other costs, and all rent remaining for the applicable terms, as provided by the governing Agreements, and pre-judgment and post-judgment interest as permitted under applicable state law;

(c)     Awarding the American Tower Plaintiffs reimbursement of all costs incurred as a result of SpeedConnect's failure to pay for the benefits received from the Agreements, including reasonable attorneys' fees and court costs;

(d)     Declaring that, pursuant to the applicable Agreement, the American Tower Plaintiffs may, without liability, take possession of any of SpeedConnect's equipment and other property located on the applicable ATC Sites, to remove them, and to dispose of them at SpeedConnect's expense;

(e)     To recover costs incurred in connection with the removal of SpeedConnect's equipment and the disposal of same;

(f)     Declaring the Agreements terminated due to SpeedConnect's defaults;

(g)     With respect to the Category 2 Agreements, declaring SpeedConnect to be holding over in violation of Paragraph 27 of the Category 2 Agreements and that SpeedConnect must therefore pay GrainComm damages equal to 150% of the monthly rent under the applicable Category 2 Agreement for each month that SpeedConnect's equipment has remained at the applicable ATC Sites following the termination date in the Notice of Termination;

(h)     Awarding reimbursement of costs incurred by the American Tower Plaintiffs in connection with SpeedConnect's breaches and defaults of the Agreements, including reasonable attorneys' fees and court costs; and

(i)     Awarding such other relief that this Court deems necessary and proper.

Respectfully submitted this May 25, 2023.

*s/ Colby Anne Kingsbury*

Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
(312) 212-6573
colby.kingsbury@faegredrinker.com

*Attorneys for American Tower Plaintiffs*